ATCHISON, T. & S. F. RY. CO. et al. v.
BIVINS.†

(Court of Civil Appeals of Texas. April 15,
1911. Rehearing Denied May 6, 1911.)

1. CARRIERS (§ 229*) — INJURIES TO LIVE
STOCK—CONNECTING CARRIERS—EXCESSIVE
DAMAGES—EVIDENCE.

In an action against connecting carriers
for damages to live stock, held, under the evidence, that a verdict of $7,710.44 apportioned
equally among three defendants was not excessive.

[Ed. Note.—For other cases, see Carriers, Dec.
Dig. § 229.*]

2. CARRIERS (§ 228*) — INJURIES TO LIVE
STOCK — NEGLIGENCE — CONNECTING CARRIERS.

In an action against three connecting carriers for damages to live stock, evidence held to
support a verdict for plaintiff against all the defendants.

[Ed. Note.—For other cases, see Carriers,
Dec. Dig. § 228.*]

3. CARRIERS (§ 218*)—INJURIES TO LIVE STOCK
—CONNECTING CARRIERS—CONTRACTS.

A contract whereby the shipper of live
stock agreed to bed the cars at the time of shipment is no defense in an action for injuries to
the stock where the proof shows beyond dispute
that the bedding was in fact done by the servants of the carrier, and it was completed and
the cattle loaded before the contract was signed.

[Ed. Note.—For other cases, see Carriers, Dec.
Dig. § 218.*]

4. APPEAL AND ERROR (§ 1068*)—HARMLESS
ERROR—SUBMISSION OF ISSUES TO JURY.

In an action against connecting carriers
for injuries to live stock, where the court submitted to the jury the issue of their separate
instead of their joint liability, it was harmless
error, where the jury found against them jointly.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4225–4228; Dec. Dig. §
1068.*]

5. DAMAGES (§ 60*) — MITIGATION — BENEFIT
TO PLAINTIFF—LIVE STOCK—INSTRUCTIONS.

In an action against carriers for injuries
to live stock, an instruction that, if any of the
cattle died through the negligence of defendants,
plaintiff is entitled to the market value of such
cattle at the terminus at the time and in the
condition they would have been but for such negligence, was erroneous, where it appeared that
plaintiff got the hides off of a number of the
dead cattle, and testified they were worth from
$5 to $8 each.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 115, 116; Dec. Dig. § 60.*]

Appeal from District Court, Potter County;
J. N. Browning, Judge.

Action by Lee Bivins against the Atchison,
Topeka & Santa Fé Railway Company and
others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Terry, Cavin & Mills and Madden, Trulove & Kimbrough, for appellants. R. R.
Hazlewood and Lumpkin, Merrill & Lumpkin,
for appellee.

CONNER, C. J. In May, 1908, appellee
shipped two train loads of cattle from El
Paso, Tex., to Amarillo, Tex., over the lines
of the Atchison, Topeka & Santa Fé Railway
Company, the Eastern Railway Company of
New Mexico, and the Pecos & Northern Texas
Railway Company. In the first train load
there were transported 799 in 22 cars, and in
the second train 1,009 in 24 cars. Appellee
instituted this suit to recover damages for
negligence in the transportation and in a trial
before a jury was awarded a verdict and
judgment for $7,710.44 apportioned equally
among the three defendants.

The defendants have appealed and urge
some 37 assignments of error, presenting apparently every possible objection to almost
every step in the proceedings below. We
shall not undertake to discuss the assignments in detail, as it would be profitless and
a needless consumption of time, the criticisms
of the petition, of the court's charge, of the
court's rulings on evidence, etc., being in
many instances more fanciful than meritorious, and we shall therefore dispose of the
appeal in a general way.

[1] It is first insisted that the verdict and
judgment are excessive, but the record entirely fails to sustain this contention. There
was evidence tending to show that in the
first shipment as many as 34 cattle died, and
as many as 100 were materially injured, and
500 more damaged to the extent of $5 to $7
per head, and 150 to 160 injured to the extent of $2 per head, the estimated damage
upon all of which was placed at $4,300. In
the second shipment the evidence shows that
there were 4 or 5 dead when the train was
unloaded; that 8 were left on the way from
the stockyards to the shipping pasture;
that others died in the pasture, possibly as
many as 15; that others were badly crippled;
that 600 were damaged $5 to $7 each; that
360 head were damaged to the extent of $2
to $3 per head—aggregating a damage to
the second shipment of $3,620, which, plus the
aggregate damage to the first shipment, constitutes a total of $7,920, an amount in excess of the verdict.

[2] In various forms it is insisted that
there is no evidence of negligence, especially
on the part of the Pecos & Northern Texas
Railway Company and the Eastern Railway
Company of New Mexico. The evidence, however, tends to show that the cattle were in
good shipping condition when delivered to
the Atchison, Topeka & Santa Fé Railway
Company at El Paso for shipment, and that
the cars furnished appellee for the purpose
were not suitable, and were insufficiently and
improperly bedded, and that at the termination of the transportation the cattle were
in a very bad condition, so that we think
it is not to be doubted that the issue of negligence on the part of the Atchison, Topeka
& Santa Fé was raised and the condition
in which the cattle were received at Amarillo
devolved upon the Pecos & Northern Texas
Railway Company the burden of showing
that it was in no way responsible for the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

injuries shown, and no effort to do this was made. There is no assignment calling upon us to determine the sufficiency of the evidence to support the verdict against the Eastern Railway Company of New Mexico alone. Moreover, the evidence tends very strongly to show that as alleged by the plaintiff in his petition that the contract of shipment was a through one, and that the Eastern Railway Company of New Mexico was but a part of the Santa Fé system. It is further contended that there is no evidence of unreasonable delay, but we think this contention must also be overruled.

[3] The objection that appellants were not liable for the improper bedding of the cars at El Paso because of a provision of the contract whereby appellee undertook this duty cannot be sustained for the reason that the proof shows beyond dispute that the bedding was in fact done by servants or agents of the railway company at El Paso, and that the whole was completed and the cattle loaded prior to the execution of the contract. The contract therefore is without application. S. A. & A. P. Ry. Co. v. Dolan, 85 S. W. 302; M. P. Ry. Co. v. Kingsbury, 25 S. W. 322.

[4] No prejudicial error is perceived in the action of the court in submitting the separate instead of the joint liability of the defendants, and we think the numerous objections to the testimony and to the action of the court in refusing special charges without merit. The cause seems to, have been fairly submitted, and the evidence to fully support the verdict and judgment with one exception which we will now notice.

[5] The court in the eighth paragraph of his charge instructed the jury that the measure of plaintiff's damages "is the difference in the market value of his cattle in the condition and at the time in which they arrived at Amarillo and the market value of such stock at the time and in the condition in which they would have arrived but for the negligence, if any, of the defendant, or defendants, as the case may be; and, if any of the plaintiff's cattle died through the negligence of said defendant or defendants, you will allow him the market value of said cattle at Amarillo at the time and in the condition in which they would have arrived there but for the negligence, if any, of the defendant or defendants." One of the objections to this charge is that appellee was thereby permitted to recover the entire value of the cattle that died when the proof shows that he got the hides off of a number of the dead cattle, and testified that they were worth from $5 to $8 each, and this objection we think well taken. The evidence authorizes the conclusion that as many as 24 cattle of the first shipment and as many as 15 in the second shipment died between the

delivering pens and in the shipping pasture, and appellee testified that he got the hides of the dead steers except those left in the stockyards, and that the hides were worth from $5 to $8 per head. Allowing the greatest number of hides chargeable to appellee on this account and at the highest price estimated by him, there is $312 worth of hides taken by appellee from the dead cattle that he should not have been permitted to recover, and the judgment will be accordingly reversed for this error in the charge, unless appellee within 20 days shall remit said amount.

This being done, the judgment will be affirmed for the remainder, with costs of appeal taxed against appellee.